NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VICTOR DAYREL NORWOOD, | : | |
| Plaintiff, | : | Civ. No. 04-1684 (GEB) |
| v. | : | |
| MONMOUTH COUNTY JAIL MEDICAL DEPARTMENT, *et al.* | : | **MEMORANDUM OPINION** |
| Defendants. | : | |

**BROWN, District Judge**

This matter comes before the Court upon the motions of defendant police officers Jeff White ("White") and Christopher Van Buren ("Van Buren") [34], Amir Bercovicz ("Bercovicz") [36] and Brian Townsend ("Townsend") [40] for summary judgment.[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons discussed below, will grant summary judgment in favor of all defendant police officers.

I.   BACKGROUND

On or about April 6, 2004, pro se Plaintiff Victor Norwood ("Plaintiff")[2] filed a civil

---

[1] Bercovicz and Townsend rely on the brief submitted on behalf of White and Van Buren in support of their motions for summary judgment [35].

[2] Plaintiff is currently incarcerated. He was recently transferred from Monmouth County Jail to the Albert C. Wagner Youth Correctional Facility in Bordentown, New Jersey. By letter dated May 10, 2005, this Court advised all counsel of record of Plaintiff's new address.

rights complaint pursuant to 28 U.S.C. § 1983 against defendant police officers White, Van Buren, Bercovicz and Townsend (collectively referred to as "Defendants") and defendant Monmouth County Jail Medical Department.[3]  Plaintiff asserts that the Defendants used excessive force during his arrest and that the Monmouth County Jail Medical Department failed to provide follow-up care for the injuries sustained.  On May 23, 2005, this Court dismissed all claims against Monmouth County because Plaintiff failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1917e(a) (2005) (PLRA).

      Defendants now move for summary judgment, asserting that they are entitled to qualified immunity from Plaintiff's claims and, in the alternative, that no genuine issue of material fact exists to preclude entry of summary judgment in their favor.  By Order issued May 25, 2005, Plaintiff was granted thirty days to file opposition to the instant motions.  To date, Plaintiff has not filed an opposition brief.  Therefore, the Court must accept the facts as alleged in Defendants' affidavits and the attached deposition testimony of witness Shawna Rainer ("Rainer") as true.

      Plaintiff's claims against Defendants arise out of his arrest on January 15, 2004.  See White Affidavit ¶ 2 and Townsend Affidavit ¶ 3.  Officers White and Townsend were on patrol and were dispatched to address a domestic violence call.  Id.  White knocked on the door but

---

[3]In an August 27, 2004 Order, this Court held that Plaintiff qualified for in forma pauperis status under 28 U.S.C. § 1915 and that sua sponte dismissal was not required under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  The Court also construed the claim against Monmouth County Jail Medical Department as a claim against Monmouth County.  See Brandon v. Holt, 469 U.S. 464 (1985) (treating § 1983 action that was brought against the city's director of police as action against the city where city had notice); Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (treating municipality and its police department as a single entity for purposes of § 1983 liability).  Hereinafter, this Court will refer to defendant Monmouth County.

received no answer. White Affidavit ¶ 3. Shortly thereafter, Officer Bercovicz arrived on the scene. Bercovicz noticed that a subject was attempting to climb out of the apartment's window and advised White. Bercovicz Affidavit ¶ 3; White Affidavit ¶ 4. Rainer, the resident of the apartment, then answered the door. White Affidavit ¶ 4. Rainer was crying and had a cut on the front of her forehead. Id. Rainer's children were in the apartment. Id. After hearing shuffling in the apartment, White entered with his service weapon drawn and found Plaintiff in the back bedroom. Id. at ¶ 4. White recognized Plaintiff and was aware that there were several outstanding warrants for his arrest. Id. Plaintiff was holding up the mattress and placing something that appeared to be plastic under it. Id. at ¶ 5. White ordered Plaintiff to place his hands in the air and advised him he was under arrest. Id.

When White re-holstered his weapon and attempted to cuff Plaintiff, Plaintiff allegedly attempted to escape. Id. A struggle ensued between Plaintiff and Officers White and Townsend. White Affidavit ¶¶ 5-6; Townsend Affidavit ¶¶ 7. White and Townsend contend that Plaintiff was resisting arrest and not allowing them to place him in handcuffs. White Affidavit ¶ 5; Townsend Affidavit ¶ 7. The struggle spilled into the living room. White Affidavit ¶ 6. Defendants contend that "the momentum of the struggle caused [them] to fall into a glass table, shattering it into many pieces." White Affidavit ¶ 6. The struggle allegedly continued. White requested Bercowicz's assistance. Id. Once White was able to open the front door, Bercowicz entered the apartment. Bercovicz Affidavit ¶ 4; White Affidavit ¶ 7. The struggle allegedly continued into the hallway outside the front door. White Affidavit ¶ 7. Allegedly in an effort to free the plaintiff's arms from under his body, White struck Plaintiff with his hands and knees. Id. White then allegedly advised Plaintiff that if he did not remove his hands from under his body,

3

that he would use pepper spray on him. Id.; Townsend Affidavit ¶ 9. Defendant allegedly continued to resist arrest. White then sprayed the pepper spray two times in Plaintiff's face at close range, and then two more times after he allegedly continued to resist. White Affidavit ¶ 7. Plaintiff allegedly then bit White's right hand. Id.; Townsend Affidavit ¶ 7; Bercovicz Affidavit ¶ 5. Again, White struck Plaintiff repeatedly in the midsection with his knee. White Affidavit ¶ 7. After several other Asbury Park police officers arrived on the scene, White finally managed to place Plaintiff in handcuffs. Id. at 8; Bercovicz Affidavit ¶ 5; Townsend Affidavit ¶ 9.

Van Buren never arrived on the scene. Van Buren Affidavit ¶¶ 4-5. He was assigned as the watch commander on the midnight shift that night. Id. at ¶ 5. As part of his duties as watchmen, Van Buren witnessed the signing of a criminal complaint against Plaintiff. Id. His signature on the complaint merely acknowledges that it was the swearing officer that actually signed the complaint. Id.

II.     ANALYSIS

   A.     Standard For A Motion For Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n. 3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prod. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no

issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255-56.

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id., "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, n.12; see also Anderson, 477 U.S. at 247-48 ("[B]y

its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion . . . the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . the [non- moving party] need not match, item for item, each piece of evidence proffered by the movant" but rather must exceed the 'mere scintilla' threshold.), cert. denied, 507 U.S. 912 (1993). As discussed above, Plaintiff has filed no opposition to this motion. Therefore, the facts alleged in the Defendants' affidavits must be accepted as true. Accordingly, there is no genuine issue of material fact precluding the entry of summary judgment.

  B. Plaintiff Has Not Demonstrated That A Constitutional Violation Occurred

Excessive force allegations are properly scrutinized under a Fourth Amendment objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1985) ("all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). The Court must consider the totality of the circumstances, including 'whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id. In Graham, the Supreme Court clarified that:

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment. [Rather,] the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (quotations and citation omitted). Ultimately, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397.

In the present case, it is undisputed that: Plaintiff had hit Ms. Rainer and blood was coming from her forehead; there were children in the apartment; Plaintiff was resisting arrest and attempting to flee; Plaintiff struck officer Bercovicz; and Plaintiff bit Officer White. Even drawing all favorable inferences in Plaintiff's favor, this Court concludes that the Defendants' conduct was objectively reasonable when considering the totality of the circumstances. Therefore, summary judgment must be entered in the Defendants' favor.

As a threshold matter, it is clear that Officer Van Buren's conduct was objectively reasonable. On the night of the incident, Van Buren was watch commander and, therefore, could not have been present during the encounter between Plaintiff and the other defendants. Therefore, Plaintiff's claims against Van Buren must be dismissed.

In determining whether the amount of force used by defendants White, Townsend and Bercovicz was reasonable, this Court is careful not to impart its own 20/20 hindsight.  The record reveals that the situation was tense and required split-second judgments.  The Defendants responded to a domestic abuse call.  When Rainer answered the door, she was bleeding from her forehead and her children were in the apartment crying.  Although Rainer indicated that there was nobody else in the apartment, Officer White heard shuffling noises.  Officer White entered the apartment with his service weapon drawn and found Plaintiff stashing something under the mattress in the bedroom.  After White directed Plaintiff that he was under arrest and re-holstered his weapon, Plaintiff attempted to escape.  A struggle ensued between Plaintiff and Officers White and Townsend.  Officer Bercovicz later joined the fray.  The Defendants claim that they fell through the glass table and then the struggle continued into the hallway.  In the hallway, Plaintiff was finally handcuffed.

Significantly, Rainer's testimony corroborates Defendants' version of events.  Rainer testified that "all the cops, it was four cops, and [Plaintiff], they came into my living room and fell on my glass table and my touch lamp trying get him out of the house, so they get him into the hallway, they didn't have the handcuffs on him yet, so they start beating him up, trying to get him to give them his hands" Rainer Dep. at 3.  According to the affidavits submitted on behalf of each defendant, Townsend, although involved in the struggle, did not strike Plaintiff.  His involvement was confined to attempting to restrain Plaintiff and place him in handcuffs.  Given the totality of the circumstances, Townsend's conduct is objectively reasonable.

As to Officer Bercovicz, he only became involved in the struggle after Plaintiff and Officers White and Townsend had fallen through the table because he could not enter the

8

apartment until White opened the locked door.  Bercovicz became engaged in the struggle in the hallway.  Bercovicz assisted in bringing Plaintiff to the ground.  Plaintiff continued to resist, striking Bercovicz in the head and biting White.  At this point, Bercovicz pushed Plaintiff's head into the ground.  This Court finds that Bercovicz's conduct was objectively reasonable under the circumstances.

As to Officer White, he was the first officer to engage Plaintiff.  White, with the assistance of Townsend and Bercovicz, attempted several times to bring Plaintiff to the ground and shouted verbal warnings.  Once in the hallway, Plaintiff was brought to the ground.  White, in an attempt to free Plaintiff's arms, "began to strike [Plaintiff] with [his] hands and knees in the midsection."  White Aff. at ¶ 7.  Unable to free his arms, White advised Plaintiff that he would use mace on him.  White delivered "two short bursts" of mace into Plaintiff's face.  White alleges that this only made Plaintiff angry and more defiant, so he then delivered two more shots of mace.  The Court notes the Supreme Court's guidance that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment."  White only struck Plaintiff after the struggle had progressed from the bedroom, into the living room and then into the hallway outside the apartment.  The record reveals that White applied only the force necessary to effectuate arrest.  At all times, Plaintiff presented an immediate threat to Rainer, her children and all officers on the scene.  Therefore, considering the totality of the circumstances, this Court concludes that White's conduct was objectively reasonable.

III. CONCLUSION

  For the foregoing reasons, the three motions for summary judgment filed on behalf of defendants White and Van Buren [34], Bercovicz [36] and Townsend [40] are granted. An appropriate form of Order is filed herewith.

                s/ Garrett E. Brown, Jr.
                GARRETT E. BROWN, JR., U.S.D.J.